UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>PROPERTY IDENTIFIED AS<br>1923 RHODE ISLAND AVENUE,<br>NORTHEAST, WASHINGTON, D.C.,<br><br>　　and<br><br>ODELL HALE,<br>　　　　　　　　Defendants.<br><br>MARGARET AUSTIN,<br><br>　　and<br><br>ODELL HALE,<br>　　　　　　　　Claimants. | Civil Action No. 07-1211 (PLF) |

MEMORANDUM OF LAW ON JURISDICTION TO HEAR AND DETERMINE
ANTI-NUISANCE CLAIMS ARISING UNDER DISTRICT OF COLUMBIA CODE

*COMES NOW*, plaintiff United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully to supply this Honorable Court with a statement of its jurisdiction to entertain claims brought in this action, pursuant to District of Columbia Code §§ 22-2713-to-22-2720 and D.C. Code §§ 42-3101, *et seq.*, to abate, enjoin, and prevent a disorderly house and drug or prostitution-related nuisance at 1923 Rhode Island Avenue, N.E., Washington, D.C.  In support whereof, plaintiff respectfully submits as follows:

**BACKGROUND**

　　1.　　On July 5, 2007, the U.S. Attorney's Office filed a civil forfeiture action *in rem* against the defendant real property at 1923 Rhode Island Avenue, N.E., under 21 U.S.C. § 881(a)(7).

The government also sought equitable relief under D.C. Code §§ 22-2713-to-22-2720 and D.C. Code §§ 42-3101, *et seq*. The federal law permits forfeiture of property used to commit felony drug crimes, and the District of Columbia statutes authorize remedies for disorderly houses and drug or prostitution-related nuisances. In its complaint, the government asserted that 28 U.S.C. § 1367 supplied jurisdiction to entertain the local D.C. Code claims.

2.      Mr. Hale and Ms. Austin are the defendant property's co-owners of record. The action named Mr. Hale as a personal defendant to the suit in equity. Mr. Hale and Ms. Austin have entered the case separately as claimants to oppose the property's forfeiture.

3.      On August 18, 2007, the government asked the Court to issue a warrant to seize the property before its forfeiture under federal law and an order to abate the disorderly house and enjoin and prevent the nuisance under District of Columbia law. The Court convened a hearing on September 12, 2007, and received evidence from the government without objection. With the agreement of the parties, on September 25, 2007, the government filed with the Court an unopposed motion to enter an opinion and order. This would have granted the motion for a seizure warrant and to abate, enjoin, and prevent the disorderly house and nuisance at 1923 Rhode Island Avenue, N.E. The Court entered on October 24, 2007, a minute order requesting the government to address: (1) "in light of the express language in D.C. Code § 42-3102, on what basis does this Court have jurisdiction over a claim under that section of the code? (2) What basis does this Court have for jurisdiction over the nuisance claim under D.C. Code § 22-2713?"

## **SUMMARY**

4.      To hear and determine the government's nuisance-abatement claims under District of Columbia law, this Court has supplemental jurisdiction authorized in 28 U.S.C. § 1367. First,

under § 1367(a), this Court has original jurisdiction because this case is a federal forfeiture action brought by the United States. 28 U.S.C. §§ 1345, 1355. Second, § 1367(a) authorizes the Court to adjudicate the anti-nuisance claims under the District of Columbia Code because they arise from a common nucleus of facts with the forfeiture claim. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Precisely the same evidence of drug crimes for six years at 1923 Rhode Island Avenue, N.E., which requires its forfeiture under federal law, also proves that it is a disorderly house and nuisance, which must be abated under District of Columbia law. The harmony of claims under federal and local law is such that the government ordinarily would be expected to try them all in one judicial proceeding. Id. Third, nothing requires the Court to decline supplemental jurisdiction for a reason set forth in 28 U.S.C. § 1367(c). Last, D.C. Code § 42-3102, which authorizes filing an anti-nuisance action in the Superior Court of the District of Columbia, does not preclude this Court from exercising supplemental jurisdiction over a claim arising under D.C. Code § 42-3101, *et seq*. See Marshall v. Marshall, 547 U.S. 293, 312-314 (2006). In any event, the government also grounded its claim to abate the nuisance and disorderly house at 1923 Rhode Island Avenue, N.E., upon D.C. Code §§ 22-2713, *et seq.*, the Kenyon Act. The Kenyon Act has no language about seeking relief in Superior Court. Thus, even if D.C. Code § 42-3102 could oust this Court's jurisdiction over Count III of the government's complaint, the Court still would have jurisdiction to hear essentially the same claim for relief sought in Count II under the separate and distinct authority of the Kenyon Act in D.C. Code §§ 22-2713, *et seq*.

## ANALYSIS AND AUTHORITY

5.   This Court has jurisdiction to hear and determine the government's claims for equitable relief under supplemental jurisdiction accorded by 28 U.S.C. § 1367. See Polling v.

Farrah, 131 F. Supp. 191, 194 & n.2 (D.D.C. 2001) (judicially created doctrines of pendent and ancillary jurisdiction are codified in statute on federal court's supplemental jurisdiction in 28 U.S.C. § 1367); Edney v. City of Montgomery, 960 F. Supp. 270, 272-273 (M.D. Ala. 1997) (original jurisdiction over federal forfeiture proceeding under 21 U.S.C. § 881 and 28 U.S.C. § 1355 supplied supplemental jurisdiction under 28 U.S.C. § 1367(a) over state-law claims for return of property); cf. Lindsay v. Government Employees Ins. Co., 371 U.S. App. D.C. 120, 124-125, 448 F.3d 416, 420-421 (2006) ("Section 1367(a) *requires* the district court to exercise supplemental jurisdiction over claims which are closely related to claims over which the district court has original jurisdiction.") (quoting McCoy v. Webster, 47 F.3d 404, 406 n.3 (11th Cir. 1995) (emphasis in McCoy)). Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[1]

      6.      To exercise supplemental jurisdiction under 28 U.S.C. § 1367(a): (1) this Court must have original jurisdiction over the case under federal law; and (2) the non-federal claims must "derive from of a common nucleus of operative fact." United Mine Workers v. Gibbs, supra, 383 U.S. at 725 (if, "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming

---

[1] In addition to the authority cited in this memorandum, two annotations review cases on supplemental jurisdiction. See Annotation, *Existence of Pendent Jurisdiction of Federal Court over State Claim when Joined with Claim Arising under Laws, Treaties, or Constitution of United States*, 75 A.L.R. 600 (1985); Annotation, *Discretionary Exercise of Pendent Jurisdiction of Federal Court over State Claim when Joined with Claim Arising under Laws, Treaties, or Constitution of United States*, 76 A.L.R. 46 (1986).

substantiality of the federal issues, there is power in federal courts to hear the whole"); see also Decatur Liquors, Inc. v. District of Columbia, 375 U.S. App. D.C. 130, 132, 478 F.3d 360, 362 (2007) (exercise of supplemental jurisdiction depends upon proper source of original federal jurisdiction); cf. Women Prisoners v. District of Columbia, 320 U.S. App. D.C. 247, 257-260, 93 F.3d 910, 920-923 (1996) (when district court possessed original jurisdiction over constitutional claims, and claims under local law arose from same facts as federal ones, "district court clearly had the power" to exercise pendent jurisdiction over claims under District of Columbia Code, but other grounds militated against doing so), cert. denied, 520 U.S. 1196 (1997).[2]

7.      This Court has original jurisdiction over this action by virtue of 28 U.S.C. § 1345 because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress, in this instance 21 U.S.C. § 881 (property linked to drug crimes shall be forfeited). The government's forfeiture complaint alleged that the defendant property had been used to commit or to facilitate the commission of federal felony drug crimes. This made the defendant property subject to seizure and forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 985(d). In support of the claim, the government supplied the Court with an affidavit and other evidence documenting nearly six years of drug activity at the premises of 1923 Rhode Island Avenue, N.E.

8.      Precisely the same evidence of nearly six years of drug activity at 1923 Rhode Island

---

[2] "Laws passed by Congress that are applicable exclusively to the District of Columbia are not federal law for jurisdictional purposes, so any claims based on such laws are necessarily local." Decatur Liquors, Inc. v. District of Columbia, supra, 375 U.S. App. D.C. at 132-133, 478 F.3d at 362-363 (citing 28 U.S.C. §§ 1331, 1366). Under the supplemental jurisdiction statute, the District of Columbia is treated as if it were a state. See 28 U.S.C. § 1367(e); Women Prisoners v. District of Columbia, supra, 320 U.S. App. D.C. at 258, 93 F.3d 910 at 921.

Avenue, N.E., sustains the government's nuisance-abatement claims brought under the D.C. Code. See D.C. Code § 22-2713(b) (defining nuisance and disorderly house as place resorted to by persons using controlled substances in violation of D.C. law for purpose of using any of these substances or for purpose of keeping or selling any of these substances in violation of D.C. law). Similarly, D.C. Code § 42-3101(5) defines a "drug or prostitution-related nuisance" as property "used or intended to be used to facilitate any violation" of the District of Columbia's anti-drug-abuse laws, and any "property used, or intended to be used, to facilitate prostitution or the use, sale, or manufacture of controlled substances or drug paraphernalia that has an adverse impact on the community . . ." D.C. Code §§ 42-3101(5)(A) and 42-3101(5)(B).

      9.      Consequently, federal forfeiture law and District of Columbia anti-nuisance statutes both seek to vindicate the government's duty to deal with property that is used unlawfully, such as crack-houses, particularly to the community's harm. Both laws aim to redress the same legal wrong, and both rely upon proof of the same facts – that a property has been the site of regular, and serious, drug crimes. Thus, beyond remedying largely the same legal harms, both laws depend upon proving a common nucleus of fact. Every fact needed to show a valid claim to abate a disorderly house and drug nuisance under District of Columbia law separately will prove that the property is subject to forfeiture under 21 U.S.C. § 881(a)(7) because it was used to facilitate committing a serious federal drug crime. At bottom, there is a complete "link or overlap between the facts of the state and federal claims." See Chelsea Condominium Owners Ass'n v. 1815 A St., Condominium Group, 468 F. Supp.2d 136, 141 (D.D.C. 2007) (citing cases deciding whether common nuclei of operative fact justify exercise of jurisdiction over related federal and state-law claims). This confluence of law and fact warrants exercise of supplemental jurisdiction under § 1367(a).

10. Once the criteria for exercising supplemental jurisdiction under § 1367(a) have been met, this Court may hear and determine claims under non-federal law unless § 1367(c) counsels otherwise. See Women Prisoners v. District of Columbia, supra, 320 U.S. App. D.C. at 257-260, 93 F.3d at 920-923 (although constitutional and tort claims arising from same facts permitted exercise of supplemental jurisdiction over local-law claims, considerations arising under § 1367(c) militated against doing so); see also Lindsay v. Government Employees Ins. Co., supra, 371 U.S. App. D.C. at 124-125, 448 F.3d at 420-421; Chelsea Condominium Owners Ass'n v. 1815 A St., Condominium Group, supra, 468 F. Supp.2d at 140-143. None of the four reasons in § 1367(c) are grounds to decline supplemental jurisdiction in this case.[3]

11. In the first instance, this case raises no novel or complex issues of any law, much less state or local law. Claimants do not oppose the government's motion for an abatement order, and did not object to the evidence adduced in support of the motion. (Claimants have, of course, reserved the right to oppose forfeiture and to object to evidence about abatement, if it is offered later

---

[3] The statute, 28 US.C. § 1367(c) allows district courts to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
    (1) the claim raises a novel or complex issue of State law;
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
    (3) the district court has dismissed all claims over which it has original jurisdiction; or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Subsection 1367(b) also precludes exercise of supplemental jurisdiction in certain instances, but those only involve original jurisdiction founded solely on diversity of citizenship under 28 U.S.C. § 1332, so § 1367 raises no bar to jurisdiction in this case.

for another purpose.)[4]

12. Even if claimants had opposed abatement, deciding whether to issue an abatement order would not pose a novel or complex issue of state law. Abatement of disorderly houses under D.C. Code § 22-2713-to-22-2722 has taken place in criminal cases for decades. See *e.g.*, Thomas v. United States, 588 A.2d 272, 275 (D.C. 1991) (to prove that defendant has maintained or kept disorderly house, government does not have to prove ownership or legal control of the premises – government need only establish that defendant in fact controlled or managed the premises); Thomas Circle Ltd. Partnership v. United States, 372 A.2d 555, 557 (1977) ("Ownership carries its duties as well as its benefits. One of them is to keep the property from a use which is unlawful. . . . The purpose of [the abatement] order was not to punish [unconvicted owners], but rather to rid the community of a nuisance."); Raleigh v. United States, 351 A.2d 510, 513-514 (D.C. 1976) (order of abatement must be entered upon conviction of keeping a disorderly house); Harris v. United

---

[4] Obviously, jurisdiction is a prerequisite for the Court to entertain a claim at all. See Decatur Liquors, Inc. v. District of Columbia, supra, 375 U.S. App. D.C. at 132, 478 F.3d at 362 (Court must address issues of supplemental jurisdiction on its own motion as it is essential to subject-matter jurisdiction). So, of course, the government does not argue that this Court can acquire in mid-litigation a jurisdiction it did not have when the case was filed.

But, when gauging at the outset of a case if it presents novel or complex issues of state law, or whether local-law claims predominate over those sounding in federal law, the Court only can try to predict or speculate how the litigation will unfold. In this matter, however, the Court need not rely entirely on its powers of prophecy, because it can see how the issues here actually did develop. Moreover, final conclusions about supplemental jurisdiction often turn on assessing if the federal claims require dismissal after a summary judgment motion. See *e.g.*, Lightfoot v. District of Columbia, 371 U.S. App. D.C. 96, 103, 448 F.3d 392, 399 (2006) (remanding for assessment of supplemental jurisdiction after many federal claims held non-viable) ; Stevenson v. Severs, 332 U.S. App. D.C. 426, 158 F.3d 1332 (1998) (remanding for assessment of supplemental jurisdiction after grant of summary judgment against claims giving rise to original federal jurisdiction). Thus, we can fairly argue that, not only did it seem unlikely at its outset that this case would raise novel issues, or that state claims would predominate, but also that these things actually did not happen either, as the case has unfolded.

States, 315 A.2d 569 (D.C. 1974) (*en banc*) (leading modern decision defining disorderly house under D.C. law, which cites United States v. Elder, 4 D.C. (4 Cranch) 507, 25 F.Cas. 996 (C.C.D.C. 1835) (No. 15,039)); see also Holmes v. United States, 50 App. D.C. 147, 148-149, 269 F. 489, 490-491 (D.C. Cir. 1920); Graul v. United States, 47 App. D.C. 543, 545-546 (D.C. 1918).[5]

13.   Although no appellate court appears to have published a decision construing the nuisance-abatement provisions in D.C. Code § 42-3101, *et seq.*, this case similarly does not present novel or complex issues of law based on this statute. In large measure, this is because the claims for relief premised on D.C. Code § 42-3101, *et seq.*, mirror those founded on D.C. Code § 22-2713-to-22-2720. Indeed, the two laws increasingly have overlapped. The Kenyon Act in the D.C. Code's Title 22 originated as a law to combat prostitution-related nuisances. But, in 1998, the District of Columbia Council expanded it to reach drug-related disorderly houses. In the same year, the Council also passed the Drug-Related Nuisance Abatement Act of 1998, now codified at D.C. Code §§ 42-3101, *et seq*. In 2006, the Council amended that anti-nuisance law in Title 42 to reach prostitution-related nuisances, as well as drug-based disorderly houses. See D.C. Law 16-81, the Nuisance Abatement Reform Act of 2006. In short, neither of the government's local-law claims for relief pose novel or complex questions of law under the District of Columbia code.

14.   Further, the government's local-law abatement claims do not predominate over its forfeiture claim. Rather, they complement each other. Even at this preliminary stage of the litigation, the government has moved for a seizure order under federal law, 18 U.S.C. § 985, at the

---

[5] Ironically, since 1914 when Congress enacted the Kenyon Act, now codified at D.C. Code § 22-2713-to-22-2720, it appears that the only cases construing its civil-law provisions to abate disorderly houses arose in this Court (or, technically, its predecessor). See Holmes v. United States, 50 App. D.C. 147, 148-149 269 F. 489, 490-491 (D.C. Cir. 1920); Graul v. United States, 47 App. D.C. 543, 545-546 (D.C. 1918).

same time as it seeks a closely related abatement order under the two provisions of the D.C. Code. Together, both the federal forfeiture and local abatement claims seek to enforce in a complete – and co-ordinated – manner the government's compelling interest in the community's relief from a drug-related nuisance and disorderly house.

15.     Last, no "exceptional circumstances" present "compelling reasons for declining" supplemental jurisdiction over this case's local-law claims. There are classes of cases that federal courts traditionally have declined to hear, even though they could be brought in federal court because of "diversity" jurisdiction. See Coll v. Coll, 690 F. Supp. 1085 (D.D.C. 1988). Coll refused to hear an action for partition of property, because of the long-standing rule that, even when a civil action meets "diversity jurisdiction," federal courts decline to take cases "upon the subject of divorce, or for the allowance of alimony." Coll v. Coll, supra, 690 F. Supp. at 1086, (citing Barber v. Barber, 62 U.S. (21 How.) 582, 584 (1858)). Thus, federal courts do not entertain "domestic relations cases where only property rights are involved." Id. (citing C.Wright, Law of Federal Courts 144 (4th ed. 1983)). But, this anti-nuisance action does not involve divorce, alimony, or domestic relations so it does not fall within the rule cited in Coll.

16.     Although D.C. Code § 42-3102 specifically authorizes filing an anti-nuisance action in the Superior Court of the District of Columbia, nothing in the section's language suggests that this was intended to limit jurisdiction over a § 42-3102 anti-nuisance action to the Superior Court alone, nor does the section expressly preclude another court from hearing such a case. The language in § 42-3102 is best construed as permissive, not exclusive – "Wherever there is reason to believe that a drug or prostitution-related nuisance exists, [an authorized plaintiff] may file an action in the Superior Court of the District of Columbia to abate, enjoin, and prevent the drug or prostitution-

related nuisance." D.C. Code § 42-3102(a). Although D.C. Code § 42-3102(b) also states that an anti-nuisance action under this statute "shall be" commenced by filing a complaint in the *Civil Branch* of the Superior Court, this should not be read to confer exclusive jurisdiction on the Superior Court – as against any other court. Rather, it should be understood to identify the Court's Civil Branch – as against any other branch, or the criminal, landlord and tenant, or tax divisions – as the place where such an action may be heard and determined when brought in Superior Court.

17.     Aside from the lack of express language conferring exclusive jurisdiction over § 42-3102 actions on Superior Court, it is doubtful that the District of Columbia Council properly could limit this court's jurisdiction. Even a state cannot limit a federal court's jurisdiction. See Marshall v. Marshall, supra, 547 U.S. at 312-314 (under federal system, state cannot render its courts exclusively competent to entertain a particular type of claim); Thompkins v. Stuttgart School Dist. No. 22, 787 F.2d 439, 441-442 (8th Cir. 1986) (right to assert jurisdiction over state claims through doctrine of pendent jurisdiction is law of the United States, which has precedence over contrary state law); see also Davet v. City of Cleveland, 456 F.3d 549 (6th Cir. 2006) (collecting cases and authorities asserting that state law cannot defeat federal jurisdiction by confining jurisdiction to specialized state court). If a state cannot circumscribe the jurisdiction of federal courts, it is unclear how a legislative body subordinate to Congress could do so. See Banner v. United States, 368 U.S. App. D.C. 224, 226, 428 F.3d 303, 305 (2005) (when Congress enacted the present form of D.C.'s government, it authorized mayor and council to exercise only those executive and legislative powers delegated by Congress), cert. denied, 126 S. Ct. 2021 (2006).

18.     Further, when Congress established the current government of the District of Columbia, it limited the District Council's legislative power over the courts in Washington, D.C.

See D.C. Code 1-206.02(a). In particular, Congress precluded the Council from altering the jurisdiction of the courts in the District of Columbia or passing a law limiting the powers of this Court or any federal court here. Under D.C. Code § 1.206.02(a), the District of Columbia Council has no authority to "Enact any act, resolution, or rule with respect to any provision of Title 11 ([of the D.C. Code] relating to organization and jurisdiction of the District of Columbia courts" nor to "Enact any act or regulation relating to the United States District Court for the District of Columbia or any other Court of the United States" in the District of Columbia. Under these circumstances, the language in D.C. Code § 42-3102 should not be read to bar this Court from hearing an anti-nuisance action brought under that statute. There certainly is no evidence that the Council meant to limit this Court's jurisdiction when it enacted D.C. Code § 42-3101, *et seq.*[6]

---

[6] To this end, Herian v. United States, 363 F. Supp. 287, 289-290 (D.D.C. 1973), is inapposite. Herian dealt with D.C. Code § 45-910 (1973 ed.; now codified at D.C. Code § 42-3210). It has language similar to D.C. Code § 42-3102: "Whenever a lease for any definite term shall expire . . . and the tenant shall fail or refuse to surrender possession . . . , the landlord *may bring* an action of ejectment . . . in the Superior Court of the District of Columbia." (Emphasis added.) Herian held that this Court did not have original jurisdiction over an ejectment action in the District of Columbia, even when commenced by the United States.

According to Herian, 28 U.S.C. § 1345 confers original jurisdiction on U.S. District Courts whenever the United States commences a case, "[e]xcept as otherwise provided by an Act of Congress[.]" Herian v. United States, supra, 363 F. Supp. at 289. Therefore, this Court would seem to have original jurisdiction over an action in ejectment in Washington, D.C., when commenced by the United States. But, Herian reasoned, Congress had amended D.C. Code § 45-910 specifically to eliminate this Court as a forum for ejectment actions. Id. Although § 45-910's previous language had granted this Court jurisdiction over ejectment actions and jurisdiction over actions for possession to the Court of General Sessions, when Congress amended § 45-910, it stated only that landlords may bring actions of ejectment in the Superior Court. Id. This amendment constituted an "act of Congress" as used in 28 U.S.C. § 1345, and trumped that section's general grant of original jurisdiction. Thus, this Court no longer had original jurisdiction over an action commenced by the United States, if it was an action in ejectment in the District of Columbia.

To the extent that Herian suggests that the language "may bring an action . . . in the Superior Court" confers exclusive jurisdiction on Superior Court, it can be distinguished. Principally,

***WHEREFORE***, plaintiff respectfully prays that this Honorable Court conclude that it has jurisdiction to adjudicate the claims in this action arising under the District of Columbia Code and enter the previously submitted unopposed opinion and order.

                              Respectfully submitted,
                              /s/ *Jeffrey Taylor*
                              JEFFREY TAYLOR
                              UNITED STATES ATTORNEY
                              District of Columbia Bar No. 498610

                              /s/ *William R. Cowden*
                              WILLIAM R. COWDEN
                              Assistant United States Attorney
                              District of Columbia Bar No. 426301

                              /s/ *Barry Wiegand*
                              BARRY WIEGAND
                              Assistant  United States Attorney
                              District of Columbia Bar No. 424288
                              555 4th St., N.W., Room 4818
                              Washington, D.C. 20530
                              (202) 307-0299; (202) 514-8707 (fax)
                              William.B.Wiegand@USDoJ.Gov

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused service of the foregoing motion and attached proposed opinion and order to be made upon counsel for claimants, Mr. Roger William Hale, Esq., and Mr. R.W. Mance, III, through this Court's ECF system on November 2, 2007.

                              */s/Barry Wiegand*
                              Barry Wiegand
                              Assistant U.S. Attorney

---

Herian's reasoning relies on Congress taking the affirmative step to remove from the old version of then-D.C. Code § 42-910 the reference to the U.S. District Court for the District of Columbia. When the District of Columbia Council enacted § 42-3102 (or its actual predecessor, D.C. Code § 44-3302), it wrote *ex nihilio*. The Council did not amend a previous grant of jurisdiction to this Court by replacing it with another grant of jurisdiction only to the Superior Court. Rather, the Council enacted an entirely new law. Thus, the premise for Herian's rationale – affirmative action by Congress – does not obtain when considering the language in the current D.C. Code § 42-3102.